# EXHIBIT A

SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
Civil Division



GUNTER I. BRAUN                              )
509 Carlsbad Court                           )
Lansdowne, MD 21227                          )
                                             )
                                             )
and                                          )
                                             )
                                             )                    0003487-06
JOHN JOSEPH GALLAGHER                        )
3838 Roland Avenue, Apt. 1302                )
Baltimore, MD 21211                          )
                                             )
                                             )
and                                          )
                                             )
                                             )
RUDOLPH MANZIONE                             )
32988 Swamp Road                             )
Dagsboro, DE 19939                           )
                                             )
                                             )
and                                          )
                                             )
PHILIP D. TORELLO                            )
503 Williamsburg Lane                        )
Odenton, MD 21113                            )
                                             )
                                             )
                Plaintiffs,                  )
        v.                                   )    Civil Action No.
                                             )
MEDTRONIC, INC.                              )
710 Medtronic Parkway                        )
Minneapolis, MN 55432                        )
w/s/o CT CORPORATION SYSTEM                  )
1015 15th Street, NW, #1000                  )
Washington, DC 20005                         )
                                             )
                Defendant.                   )

RECEIVED
Civil Clerk's Office

MAY 0 5 2006

Superior Court of the
District of Columbia
Washington, D.C.

**COMPLAINT**
(ICD Litigation – Products Liability, Punitive Damages)

1.      Jurisdiction is founded upon 11 D.C. Code §921 (1981 ed.).

2.      At all relevant times, Defendant is engaged, or has been engaged, in the testing,

manufacturing, licensing, marketing, selling, promoting, and distributing, either directly or

indirectly through third parties, of implantable cardioverter defibrillators ("ICDs") and/or

pacemakers throughout the United States, and are doing business in the District of Columbia.

## COUNT I
### (Negligence – Gunter I. Braun v. Medtronic, Inc.)

3.     On or about April 6, 2004, Plaintiff Braun was implanted with a Medtronic Marquis VR Model 7230 ICD for ventricular tachycardia. The device was implanted at St. Agnes Hospital in Baltimore, Maryland.

4.     On or about February 11, 2005, Medtronic issued a recall of certain of its ICDs, including the Marquis VR Model 7230, due to defects in the devices.

5.     As a result of the Defendant's defective ICD, Mr. Braun requires ongoing medical monitoring and may require surgery to replace said defective device.

6.     As a result of the Defendant's defective ICD, Mr. Braun suffered injuries, including, but not limited to, anxiety from the current and future status of his ICD, incurred medical expenses for care and treatment, and suffered physical and mental pain.

7.     Said injuries were the result of the negligence of the Defendant, including, but not limited to, failure to test, failure to warn, over-promotion of ICDs, negligent design, and failure to heed and report adverse reports regarding the safety of ICDs.

## COUNT II
### (Strict Liability – Gunter I. Braun v. Medtronic, Inc.)

8.     All of the allegations contained in Count I are realleged and incorporated herein by reference.

9.     Defendant was at all relevant times engaged in designing, developing, testing, inspecting, promoting, advertising, manufacturing, and/or distributing ICDs, which they sold and/or provided to various healthcare providers for implantation in patients as ultimate consumers throughout the United States, including Plaintiff Braun.

2

10.    While Defendant was engaged in the designing, testing, inspecting, manufacturing, marketing, distributing, and/or selling ICDs, Defendant sold the ICDs to other healthcare providers for use by and resale to patients, including Plaintiff Braun.

11.    The subject ICD implanted in Mr. Braun was in the same form and condition in which it existed when Defendant sold and/or provided and delivered the ICD for distribution to various healthcare providers.

12.    Defendant expected the ICD to reach consumers, including Mr. Braun, in the condition in which they sold them.

13.    Said product was defective when placed on the market by Defendant. A reasonable seller would not have sold the product had he/she known of the risks involved.  The risks were greater than a reasonable buyer would expect.

14.    Said product was defective and unreasonably dangerous when put to its intended use.

15.    As a result of Defendant's marketing and promotion of said defective and unreasonably dangerous product, Mr. Braun was implanted with said defective device and has suffered injury, loss, and damages as aforesaid.

16.    By reason of having marketed and promoted ICDs in their defective and unreasonably dangerous condition, Defendant is strictly liable to Plaintiff Braun for his ICD-related injuries, losses, and damages.

## COUNT III
### (Breach of Warranty – Gunter I. Braun v. Medtronic, Inc.)

17.    All of the allegations contained in Counts I and II are realleged and incorporated herein by reference.

18.    At all times relevant to this action, Defendant marketed and promoted ICDs

3

accompanied by implied and express warranties and representations to physicians and their patients that the device was efficacious to treat ventricular tachycardia as directed for such purposes.

19.    Defendant knew, or should have known, that patients, including Plaintiff Braun and his attending physicians, were relying on Defendant's skills and judgments, and the implied and express warranties and representations.

20.    At all times relevant to this action, these implied and express warranties and representations were false, misleading, and unfounded.

21.    As a direct result of the breach of warranties by the Defendant, Plaintiff Braun has been injured as aforesaid.

**COUNT IV**
**(Misrepresentation – Gunter I. Braun v. Medtronic, Inc.)**

22.    All of the allegations contained in Counts I, II, and III are realleged and incorporated herein by reference.

23.    Defendant represented to patients, including Plaintiff Braun and his attending physicians, in promotion campaigns, advertisements, labeling, and literature that the subject ICD was safe, effective, and adequately tested, which representations were made and publicized with the purpose and intent of having physicians and their patients rely on them.

24.    Plaintiff Braun and his attending physicians did, in fact, rely on Defendant's representations in their advice about purchase, use, and implantation of the subject ICD.

25.    At all times relevant to this action, these representations were known to Defendant to be false or they were made by Defendant in conscious, reckless and/or unreasonable disregard of facts available to Defendant, indicating a lack of efficacy and a danger to patients.

4

26.     As a direct result of said false representations by Defendant, Plaintiff Braun was injured as aforesaid.

## COUNT V
### (Punitive Damages – Gunter I. Braun v. Medtronic, Inc.)

27.     The acts of the Defendant were gross, wanton and intentional in that Defendant, at the time of Plaintiff Braun's implant, had actual and constructive notice that the subject ICD was defective.  Additionally, the Defendant knew or should have known that the subject ICD was ineffective, of no use and provided no benefit to the patient. Nonetheless, the Defendant knowingly and intentionally promoted the subject ICD as safe and effective to treat ventricular tachycardia disregarding the adverse reports that demonstrated the defective nature of the subject ICD.  Additionally, the Defendant fraudulently deceived the Food and Drug Administration, the cardiology profession and Plaintiff Braun by knowingly and intentionally withholding adverse reports, which it knew revealed the defective nature of their ICD.

## COUNT VI
### (Negligence – John Joseph Gallagher v. Medtronic, Inc.)

28.     All of the foregoing allegations are realleged and incorporated herein by reference.

29.     On or about November 25, 2002, Plaintiff Gallagher was implanted with a Medtronic Marquis DR Model 7274 ICD. The device was implanted at Sinai Hospital of Baltimore, Maryland.

30.     On or about February 11, 2005, Medtronic issued a recall of certain of its ICDs, including the Medtronic Marquis DR Model 7274, due to defects in the devices.

31.     As a result of the Defendant's defective ICD, Mr. Gallagher required surgery to replace said defective device on or about February 24, 2005, at the University of Maryland Medical Center in Baltimore, Maryland.

5

32.     As a result of the Defendant's defective ICD, Mr. Gallagher suffered injuries, including, but not limited to, ICD replacement surgery, incurred medical expenses for care and treatment, and suffered physical and mental pain.

33.     Said injuries were the result of the negligence of the Defendant, including, but not limited to, failure to test, failure to warn, over-promotion of ICDs, negligent design, and failure to heed and report adverse reports regarding the safety of ICDs.

## COUNT VII
### (Strict Liability – John Joseph Gallagher v. Medtronic, Inc.)

34.     All of the allegations contained in Count VI are realleged and incorporated herein by reference.

35.     Defendant was at all relevant times engaged in designing, developing, testing, inspecting, promoting, advertising, manufacturing, and/or distributing ICDs, which they sold and/or provided to various healthcare providers for implantation in patients as ultimate consumers throughout the United States, including Plaintiff Gallagher.

36.     While Defendant was engaged in the designing, testing, inspecting, manufacturing, marketing, distributing, and/or selling ICDs, Defendant sold the ICDs to other healthcare providers for use by and resale to patients, including Plaintiff Gallagher.

37.     The subject ICD implanted in Mr. Gallagher was in the same form and condition in which it existed when Defendant sold and/or provided and delivered the ICD for distribution to various healthcare providers.

38.     Defendant expected the ICD to reach consumers, including Mr. Gallagher, in the condition in which they sold them.

39.    Said product was defective when placed on the market by Defendant. A reasonable seller would not have sold the product had he/she known of the risks involved. The risks were greater than a reasonable buyer would expect.

40.    Said product was defective and unreasonably dangerous when put to its intended use.

41.    As a result of Defendant's marketing and promotion of said defective and unreasonably dangerous product, Mr. Gallagher was implanted with said defective device and has suffered injury, loss, and damages as aforesaid.

42.    By reason of having marketed and promoted ICDs in their defective and unreasonably dangerous condition, Defendant is strictly liable to Plaintiff Gallagher for his ICD-related injuries, losses, and damages.

## COUNT VIII
### (Breach of Warranty – John Joseph Gallagher v. Medtronic, Inc.)

43.    All of the allegations contained in Counts VI and VII are realleged and incorporated herein by reference.

44.    At all times relevant to this action, Defendant marketed and promoted ICDs accompanied by implied and express warranties and representations to physicians and their patients that the device was efficacious to treat ventricular tachycardia as directed for such purposes.

45.    Defendant knew, or should have known, that patients, including Plaintiff Gallagher and his attending physicians, were relying on Defendant's skills and judgments, and the implied and express warranties and representations.

46.    At all times relevant to this action, these implied and express warranties and representations were false, misleading, and unfounded.

7

47.    As a direct result of the breach of warranties by the Defendant, Plaintiff Gallagher has been injured as aforesaid.

## COUNT IX
**(Misrepresentation – John Joseph Gallagher v. Medtronic, Inc.)**

48.    All of the allegations contained in Counts VI, VII, and VIII are realleged and incorporated herein by reference.

49.    Defendant represented to patients, including Plaintiff Gallagher and his attending physicians, in promotion campaigns, advertisements, labeling, and literature that the subject ICD was safe, effective, and adequately tested, which representations were made and publicized with the purpose and intent of having physicians and their patients rely on them.

50.    Plaintiff Gallagher and his attending physicians did, in fact, rely on Defendant's representations in their advice about purchase, use, and implantation of the subject ICD.

51.    At all times relevant to this action, these representations were known to Defendant to be false or they were made by Defendant in conscious, reckless and/or unreasonable disregard of facts available to Defendant, indicating a lack of efficacy and a danger to patients.

52.    As a direct result of said false representations by Defendant, Plaintiff Gallagher was injured as aforesaid.

## COUNT X
**(Punitive Damages – John Joseph Gallagher v. Medtronic, Inc.)**

53.    The acts of the Defendant were gross, wanton and intentional in that Defendant, at the time of Plaintiff Gallagher's implant, had actual and constructive notice that the subject ICD was defective. Additionally, the Defendant knew or should have known that the subject ICD was ineffective, of no use and provided no benefit to the patient. Nonetheless, the Defendant knowingly and intentionally promoted the subject ICD as safe and effective to treat ventricular

8

tachycardia disregarding the adverse reports that demonstrated the defective nature of the subject ICD. Additionally, the Defendant fraudulently deceived the Food and Drug Administration, the cardiology profession and Plaintiff Gallagher by knowingly and intentionally withholding adverse reports, which it knew revealed the defective nature of their ICD.

**COUNT XI**
**(Negligence – Rudolph Manzione v. Medtronic, Inc.)**

54.    All of the foregoing allegations are realleged and incorporated herein by reference.

55.    On or about February 5, 2004, Plaintiff Manzione was implanted with a Medtronic Marquis DR Model 7274 ICD. The device was implanted at Peninsula Regional Medical Center in Salisbury, Maryland.

56.    On or about February 11, 2005, Medtronic issued a recall of certain of its ICDs, including the Medtronic Marquis DR Model 7274, due to defects in the devices.

57.    As a result of the Defendant's defective ICD, Mr. Manzione required surgery to replace said defective device on or about April 26, 2005, at Peninsula Regional Medical Center in Salisbury, Maryland.

58.    As a result of the Defendant's defective ICD, Mr. Manzione suffered injuries, including, but not limited to, ICD replacement surgery, incurred medical expenses for care and treatment, and suffered physical and mental pain.

59.    Said injuries were the result of the negligence of the Defendant, including, but not limited to, failure to test, failure to warn, over-promotion of ICDs, negligent design, and failure to heed and report adverse reports regarding the safety of ICDs.

**COUNT XII**
**(Strict Liability – Rudolph Manzione v. Medtronic, Inc.)**

9

60.     All of the allegations contained in Count XI are realleged and incorporated herein by reference.

61.     Defendant was at all relevant times engaged in designing, developing, testing, inspecting, promoting, advertising, manufacturing, and/or distributing ICDs, which they sold and/or provided to various healthcare providers for implantation in patients as ultimate consumers throughout the United States, including Plaintiff Manzione.

62.     While Defendant was engaged in the designing, testing, inspecting, manufacturing, marketing, distributing, and/or selling ICDs, Defendant sold the ICDs to other healthcare providers for use by and resale to patients, including Plaintiff Manzione.

63.     The subject ICD implanted in Mr. Manzione was in the same form and condition in which it existed when Defendant sold and/or provided and delivered the ICD for distribution to various healthcare providers.

64.     Defendant expected the ICD to reach consumers, including Mr. Manzione, in the condition in which they sold them.

65.     Said product was defective when placed on the market by Defendant. A reasonable seller would not have sold the product had he/she known of the risks involved. The risks were greater than a reasonable buyer would expect.

66.     Said product was defective and unreasonably dangerous when put to its intended use.

67.     As a result of Defendant's marketing and promotion of said defective and unreasonably dangerous product, Mr. Manzione was implanted with said defective device and has suffered injury, loss, and damages as aforesaid.

68. By reason of having marketed and promoted ICDs in their defective and unreasonably dangerous condition, Defendant is strictly liable to Plaintiff Manzione for his ICD-related injuries, losses, and damages.

## COUNT XIII
### (Breach of Warranty – Rudolph Manzione v. Medtronic, Inc.)

69. All of the allegations contained in Counts XI and XII are realleged and incorporated herein by reference.

70. At all times relevant to this action, Defendant marketed and promoted ICDs accompanied by implied and express warranties and representations to physicians and their patients that the device was efficacious to treat ventricular tachycardia as directed for such purposes.

71. Defendant knew, or should have known, that patients, including Plaintiff Manzione and his attending physicians, were relying on Defendant's skills and judgments, and the implied and express warranties and representations.

72. At all times relevant to this action, these implied and express warranties and representations were false, misleading, and unfounded.

73. As a direct result of the breach of warranties by the Defendant, Plaintiff Manzione has been injured as aforesaid.

## COUNT XIV
### (Misrepresentation – Rudolph Manzione v. Medtronic, Inc.)

74. All of the allegations contained in Counts XI, XII, and XIII are realleged and incorporated herein by reference.

75. Defendants represented to patients, including Plaintiff Manzione and his attending physicians, in promotion campaigns, advertisements, labeling, and literature that the subject ICD

was safe, effective, and adequately tested, which representations were made and publicized with the purpose and intent of having physicians and their patients rely on them.

76.    Plaintiff Manzione and his attending physicians did, in fact, rely on Defendant's representations in their advice about purchase, use, and implantation of the subject ICD.

77.    At all times relevant to this action, these representations were known to Defendant to be false or they were made by Defendant in conscious, reckless and/or unreasonable disregard of facts available to Defendant, indicating a lack of efficacy and a danger to patients.

78.    As a direct result of said false representations by Defendant, Plaintiff Manzione was injured as aforesaid.

### COUNT XV
**(Punitive Damages – Rudolph Manzione v. Medtronic, Inc.)**

79.    The acts of the Defendant were gross, wanton and intentional in that Defendant, at the time of Plaintiff Manziones's implant, had actual and constructive notice that the subject ICD was defective. Additionally, the Defendant knew or should have known that the subject ICD was ineffective, of no use and provided no benefit to the patient. Nonetheless, the Defendant knowingly and intentionally promoted the subject ICD as safe and effective to treat ventricular tachycardia disregarding the adverse reports that demonstrated the defective nature of the subject ICD. Additionally, the Defendant fraudulently deceived the Food and Drug Administration, the cardiology profession and Plaintiff Manzione by knowingly and intentionally withholding adverse reports, which it knew revealed the defective nature of their ICD.

### COUNT XVI
**(Negligence – Philip D. Torello v. Medtronic, Inc.)**

80.    All of the foregoing allegations are realleged and incorporated herein by reference.

12

81.    On or about August 28, 2003, Plaintiff Torello was implanted with a Medtronic Marquis VR Model 7230CX ICD. The device was implanted at North Arundel Hospital in Glen Burnie, Maryland.

82.    On or about February 11, 2005, Medtronic issued a recall of certain of its ICDs, including the Marquis VR Model 7230CX, due to defects in the devices.

83.    As a result of the Defendant's defective ICD, Mr. Torello required surgery to replace said defective device on or about April 29, 2005, at North Arundel Hospital in Glen Burnie, Maryland.

84.    As a result of the Defendant's defective ICD, Mr. Torello suffered injuries, including, but not limited to, ICD replacement surgery, incurred medical expenses for care and treatment, and suffered physical and mental pain.

85.    Said injuries were the result of the negligence of the Defendant, including, but not limited to, failure to test, failure to warn, over-promotion of ICDs, negligent design, and failure to heed and report adverse reports regarding the safety of ICDs.

## COUNT XVII
### (Strict Liability – Philip D. Torello v. Medtronic, Inc.)

86.    All of the allegations contained in Count XVI are realleged and incorporated herein by reference.

87.    Defendant was at all relevant times engaged in designing, developing, testing, inspecting, promoting, advertising, manufacturing, and/or distributing ICDs, which they sold and/or provided to various healthcare providers for implantation in patients as ultimate consumers throughout the United States, including Plaintiff Torello.

88.    While Defendant was engaged in the designing, testing, inspecting, manufacturing, marketing, distributing, and/or selling ICDs, Defendant sold the ICDs to other healthcare providers for use by and resale to patients, including Plaintiff Torello.

89.    The subject ICD implanted in Mr. Torello was in the same form and condition in which it existed when Defendant sold and/or provided and delivered the ICD for distribution to various healthcare providers.

90.    Defendant expected the ICD to reach consumers, including Mr. Torello, in the condition in which they sold them.

91.    Said product was defective when placed on the market by Defendant. A reasonable seller would not have sold the product had he/she known of the risks involved.  The risks were greater than a reasonable buyer would expect.

92.    Said product was defective and unreasonably dangerous when put to its intended use.

93.    As a result of Defendant's marketing and promotion of said defective and unreasonably dangerous product, Mr. Torello was implanted with said defective device and has suffered injury, loss, and damages as aforesaid.

94.    By reason of having marketed and promoted ICDs in their defective and unreasonably dangerous condition, Defendant is strictly liable to Plaintiff Torello for his ICD-related injuries, losses, and damages.

## COUNT XVIII
### (Breach of Warranty – Philip D. Torello v. Medtronic, Inc.)

95.    All of the allegations contained in Counts XVI and XVII are realleged and incorporated herein by reference.

96.    At all times relevant to this action, Defendant marketed and promoted ICDs

14

accompanied by implied and express warranties and representations to physicians and their patients that the device was efficacious to treat ventricular tachycardia as directed for such purposes.

97.     Defendant knew, or should have known, that patients, including Plaintiff Torello and his attending physicians, were relying on Defendant's skills and judgments, and the implied and express warranties and representations.

98.     At all times relevant to this action, these implied and express warranties and representations were false, misleading, and unfounded.

99.     As a direct result of the breach of warranties by the Defendant, Plaintiff Torello has been injured as aforesaid.

## COUNT XIX
### (Misrepresentation – Philip D. Torello v. Medtronic, Inc.)

100.    All of the allegations contained in Counts XVI, XVII, and XVIII are realleged and incorporated herein by reference.

101.    Defendant represented to patients, including Plaintiff Torello and his attending physicians, in promotion campaigns, advertisements, labeling, and literature that the subject ICD was safe, effective, and adequately tested, which representations were made and publicized with the purpose and intent of having physicians and their patients rely on them.

102.    Plaintiff Torello and his attending physicians did, in fact, rely on Defendant's representations in their advice about purchase, use, and implantation of the subject ICD.

103.    At all times relevant to this action, these representations were known to Defendant to be false or they were made by Defendant in conscious, reckless and/or unreasonable disregard of facts available to Defendant, indicating a lack of efficacy and a danger to patients.

104. As a direct result of said false representations by Defendant, Plaintiff Torello was injured as aforesaid.

<u>COUNT XX</u>
(Punitive Damages – Philip D. Torello v. Medtronic, Inc.)

105. The acts of the Defendant were gross, wanton and intentional in that Defendant, at the time of Plaintiff Torello's implant, had actual and constructive notice that the subject ICD was defective. Additionally, the Defendant knew or should have known that the subject ICD was ineffective, of no use and provided no benefit to the patient. Nonetheless, the Defendant knowingly and intentionally promoted the subject ICD as safe and effective to treat ventricular tachycardia disregarding the adverse reports that demonstrated the defective nature of the subject ICD. Additionally, the Defendant fraudulently deceived the Food and Drug Administration, the cardiology profession and Plaintiff Torello by knowingly and intentionally withholding adverse reports, which it knew revealed the defective nature of their ICD.

**WHEREFORE**, Plaintiff Gunter I. Braun demands judgment against Defendant in the sum of Two Million Dollars ($2,000,000.00), as compensatory damages and the sum of Two Million Dollars ($2,000,000.00) as punitive damages plus costs.

**WHEREFORE**, Plaintiff John Joseph Gallagher demands judgment against Defendant in the sum of Two Million Dollars ($2,000,000.00), as compensatory damages and the sum of Two Million Dollars ($2,000,000.00) as punitive damages plus costs.

**WHEREFORE**, Plaintiff Rudolph Manzione demands judgment against Defendant in the sum of Two Million Dollars ($2,000,000.00), as compensatory damages and the sum of Two Million Dollars ($2,000,000.00) as punitive damages plus costs.

**WHEREFORE,** Plaintiff Philip D. Torello demands judgment against Defendant in the sum of Two Million Dollars ($2,000,000.00), as compensatory damages and the sum of Two Million Dollars ($2,000,000.00) as punitive damages plus costs.

Respectfully submitted,

AARON M. LEVINE & ASSOCIATES

Aaron M. Levine, #7864
1320 19th Street, N.W.
Suite 500
Washington, D.C. 20036
Phone: (202) 833-8040
Fax:   (202) 833-8046

Brandon J. Levine, #412130

Renee L. Robinson-Meyer, #455375

Steven J. Lewis, #472564

Counsel for Plaintiffs

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all issues of material facts.

Aaron M. Levine

17

CA Form 1

# Superior Court of the District of Columbia
## CIVIL DIVISION
500 Indiana Avenue, N.W., Room JM-170
Washington, D.C. 20001  Telephone: 879-1133

| GUNTER I. BRAUN et.al. | |
|---|---|

*Plaintiff*

**0003487-06**

VS.

| MEDTRONIC, INC | |
|---|---|

Civil Action No. | |

*Defendant*

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon your exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government  you have 60 days after service of this summons to serve your Answer. A copy of the Answer must be mailed  to the attorney for the party plaintiff who is suing you. The attorney's name and address appear **below.**   If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue.  N.W. between 9:00 am. and 4:00 pm., Mondays through Fridays or between 9:00 am. and 12:00 Noon on Saturdays.  You may file the original Answer  with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff If you fail to file an Answer, judgment  by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

| Aaron M. Levine | |
|---|---|

Name of Plaintiff's Attorney

By

Deputy Clerk

| 1320 19th St., NW, Suite 500 | |
|---|---|

Address

| Washington, DC  20036 | |
|---|---|

Date | 5-5-06 |

| (202) 833-8040 | |
|---|---|

Telephone

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS  FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

Form CV(6)-456/Mar. 98

**NOTE:**  SEE  IMPORTANT  INFORMATION  ON  BACK  OF  THIS  FORM.

IMPORTANT: IF YOU FAIL TO SERVE AND FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, DO NOT *FAIL TO ANSWER WITHIN THE REQUIRED TIME*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (628-1 161) or the Neighborhood Legal Services (682-2700) for help or come to Room JM 170 at 500 Indiana Avenue, N.W., for more information concerning where you may ask for such help.



## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

GUNTER I BRAUN
Vs.
MEDTRONIC, INC.

C.A. No.     2006 CA 003487 B

## INITIAL ORDER

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order, and any General Order issued **by the judge** to whom the case is assigned. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(o).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

Chief Judge Rufus G. King, III

Case Assigned to:  Judge GERALD I FISHER
Date:  May 5, 2006
Initial Conference: 9:30 am, Friday, August 04, 2006
Location:  Courtroom A-50
           515 5th Street N.W.
           WASHINGTON, DC  20001

Caio.doc